Opinion issued May 14, 2009









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00285-CR






KEVIN PATRICK PILGREEN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 262nd District Court

Harris County, Texas

Trial Court Cause No. 1131373






MEMORANDUM OPINION


 A jury convicted appellant, Kevin Patrick Pilgreen, of burglary of a habitation,
enhanced by two prior felonies, and assessed punishment at 40 years' confinement. 
In two points of error, appellant contends that (1) the trial court erred in denying his
motion to suppress evidence, which was based on his assertion that a pretrial lineup
was impermissibly suggestive, and (2) the evidence is factually insufficient to support
the conviction. We affirm.

Background

 On August 14, 2007, Veronica Ramos was taking a shower at 10:30 in the
morning when she heard her dog barking excitedly at the door. Ramos turned off the
water and heard a loud, repeated knocking at the front door. Ramos went to get
dressed when she heard the knocking stop and the garage door open. As Ramos was
trying to get dressed, she heard the sliding glass doors on the patio open and a man
screaming "HPD, HPD." Ramos grabbed a dumbbell and walked into the hallway. 
A man standing about six to seven feet away said, "I'm so sorry," and then ran out the
door and closed it behind him. Ramos then ran toward the window to look out. She
saw the man get into the driver's seat of a pickup truck. She also saw that her
brother's motorcycle was in the bed of the truck. Ramos also saw another man in the
passenger seat of the truck, but she could not see his face. As the man she had seen
in the house pulled the truck out of the driveway, Ramos wrote down the truck's
license plate number.

 Ramos called the police. When they arrived she gave them the license plate
number she had written down. She also described the man she had seen as having
"dirty blond" hair, being in his late 30's or early 40's and approximately 5' 6" tall. 
The man was wearing a baseball cap, jeans, and a polo shirt.

 Seventeen days later, on August 31, Ramos went to the police station to view
a videotaped lineup. The officer conducting the lineup told Ramos to look at the
video and to take her time. He offered to replay the video if necessary, and he also
told Ramos that "the person [who committed the crime] might not even be in the
lineup." Within 40 seconds, Ramos had concluded that appellant was the man she had
seen in her house, but she did not say anything to the officer until the video was over. 
On the video, the officer had all the participants in the lineup put on a baseball cap
and say "HPD." After the video concluded, Ramos identified appellant as the man
she had seen in her house. At this point, she noted that one of the other lineup
participants looked a lot like appellant, but that he was much taller than the man she
had seen. The officer conducting the lineup said, "yeah, they're brothers."

Pretrial Lineup Identification of Appellant

 In his first point of error, appellant contends that the trial court erred when it
denied his motion to suppress Ramos's pretrial lineup identification of him. 
Appellant asserts that the lineup viewed by Ramos was impermissively suggestive
because of the disparity in height and hair color of appellant and the other lineup
participants. Additionally, appellant asserts that Ramos "realized that there were two
men that looked alike and chose appellant because he was the shorter of the two."
 Appellant points out that Ramos described her assailant as being between 5' 6"
and 5' 7", but that all of the men except one--not appellant--were actually taller than
5' 6". The record shows that appellant, and all but one of the men in the line up are
taller than 5' 6". Appellant is approximately 5'10" tall, and is at least 1 inch shorter
than his brother, who was also in the lineup. Appellant also points out that two of the
men in the lineup had darker hair that he has. Appellant concludes, "The
discrepancies in Ms. Ramos' description of the burglar and the man that she chose in
the video lineup demonstrate the unreliability of the in-court identification and the
Motion to Suppress should have been granted."
 We apply a de novo standard of review to determine whether an identification
procedure was so impermissibly suggestive that it gave rise to a very substantial
likelihood of misidentification. Cienfuegos v. State, 113 S.W.3d 481, 491 (Tex.
App.--Houston [1st Dist.] 2003, pet. ref'd). We first look to the totality of the
circumstances surrounding the identification to determine if the procedure was
unnecessarily suggestive. Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App.
1988). If we conclude that the identification procedure was impermissibly
suggestive, we then consider the factors listed in Neil v. Biggers, 409 U.S. 188, 199,
93 S. Ct. 375, 382 (1972), to determine whether the suggestive procedure gave rise
to a substantial likelihood of irreparable misidentification. Cienfuegos, 113 S.W.3d
at 491. A defendant bears the burden to show by clear and comvincing evidence both
impermissible suggestion and a substantial likelihood of misidentification. Barley
v. State, 906 S.W.2d 27, 33-34 (Tex. Crim. App. 1995).

 Though good practice dictates that the individuals in a lineup should be as
similar as possible, a pretrial identification procedure is not impermissibly suggestive
simply because the lineup members are not identical in appearance. Buxton v. State,
699 S.W.2d 212, 216 (Tex. Crim. App. 1985); Cienfuegos, 113 S.W.3d at 491.
Neither due process nor common sense requires such exactitude. Buxton, 699 S.W.2d
at 216; Cienfuegos, 113 S.W.3d at 491. A lineup becomes suggestive when the
accused is placed with persons of distinctly different appearance, race, hair color,
height, or age. Withers v. State, 902 S.W.2d 122, 125 (Tex. App.--Houston [1st
Dist.] 1995, pet. ref'd). Minor discrepancies between lineup participants will not
render a lineup unduly suggestive. Id. In sum, the individuals need not be identical
in appearance to the defendant, but their similarities in appearance should provide a
reasonable test for the witness's capacity to reliably identify the perpetrator.
Cienfuegos, 113 S.W.3d at 492.

 As mentioned, appellant bases his challenge to the lineup on discrepancies in
the height and hair color of appellant and the other individuals in the lineup. The
record reflects that two of the lineup participants had somewhat darker hair than
appellant. Four of the participants, including appellant, had light hair and were
balding. All except one of the men, including appellant, were taller than the 5' 6" that
Ramos had recalled. All were similar in age and weight.

 Despite any dissimilarities, we note that all six men in the lineup were dressed
in light colored shirts, jeans, and were asked to put a baseball cap on their heads. All
had blond to light brown hair, which they each wore short. Four participants,
including appellant, were balding, although this fact would not have been apparent
to Ramos at the time of the offense because the perpetrator wore a baseball cap. All 
of the men were of a similar height. Appellant was neither the tallest nor the shortest.

 We conclude that the participants in the lineup were not so distinctly different
as to make the identification procedure impermissibly suggestive. This is particularly
true in light of the overall similarities in the men's actual appearances, as reflected
in the videotaped lineup. In fact, appellant's real complaint seems to be that he
looked too similar to his brother, who was also in the lineup. However, a lineup is
considered unduly suggestive if other participants are too dissimilar--not too
similar--to the defendant. See Reynolds v. State, 2006 WL 3742898 (Tex.
App.--Dallas 2006, no pet.) (memo op.) (not designated for publication) (holding
that lineup is not impermissively suggestive because other participants are too
similar). We conclude that appellant has not shown that the lineup procedure was
impermissibly suggestive.

 Accordingly, we overrule point of error one.

 In point of error two, appellant contends that the evidence is factually
insufficient to support his conviction. Specifically, appellant claims that "the
[identification] testimony [by Ramos] was not clear and convincing," and there was
no physical evidence linking appellant to the crime.

 When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
"clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury's resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of 
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury's verdict. Id. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury's verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

 "Appellate courts should afford almost complete deference to a jury's decision
when that decision is based upon an evaluation of credibility." Lancon v. State, 253
S.W.3d 699, 705 (Tex. Crim. App. 2008). "The jury is in the best position to judge
the credibility of a witness because it is present to hear the testimony, as opposed to
an appellate court who relies on the cold record." Id. The jury "may choose to
believe some testimony and disbelieve other testimony." Id. at 707.

 Here, Ramos positively identified appellant as the perpetrator both in the
pretrial lineup and at trial. Ramos never wavered in her identification of appellant. 
She stated that she was about 6 to 7 feet from appellant when she saw him. She
testified that he had lots of wrinkles on his face and his cheekbones were very
defined. Even though appellant's brother and several very similar looking men were
in the lineup, Ramos quickly identified appellant as the man she had seen in her
apartment. Although there was no fingerprint, DNA, or other physical evidence
linking appellant to the crime, there was other circumstantial evidence linking him
to the crime. In fact, when appellant was arrested, he was driving the truck that
matched the description and license plate number that Ramos had provided to the
police. Inside the truck were several items that appeared to have been stolen,
including a box of watches and pocket knives.

 In light of the Ramos's positive and unwavering identification of appellant and
the circumstances of appellant's arrest, we cannot say that the evidence is so weak
that the verdict is clearly wrong and manifestly unjust or that the verdict is against the
great weight and preponderance of the evidence. Johnson, 23 S.W.3d at 11.

 Accordingly, we overrule point of error two.

CONCLUSION

 We affirm the judgment of the trial court.



 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).