Opinion issued February 10, 2005






 
 


 







In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01170-CR




FRANCISCO JAVIER PEREZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 924380




MEMORANDUM OPINION

          A jury convicted appellant, Francisco Javier Perez, of capital murder for a
murder committed during the course of a robbery. Tex. Pen. Code Ann. § 19.03
(Vernon Supp. 2004-2005). The trial court assessed punishment at confinement for
life. 
          In 10 issues, appellant contends that the evidence is legally and factually
insufficient to support his conviction as a principal, a party, or a conspirator. 
Specifically, appellant contends that the evidence failed to establish that he caused
complainant’s death; that he intended for any party to cause complainant’s death; that
he aided, assisted, or encouraged any party to cause complainant’s death; or that he
entered into a conspiracy to commit the underlying robbery and should have
anticipated complainant would be shot and killed.
          We affirm.
Facts
          In the early morning hours of May 19, 2002, complainant, Prisileano Rodriguez
(“Prisileano”), and his friends, Alfredo Garcia (“Alfredo”), Arcadio Mora
(“Arcadio”), and Kelly Mora (“Kelly”), were riding in Arcadio’s Ford Ranger pickup
truck, on their way to Prisileano’s house. Alfredo drove, Prisileano rode in the
passenger seat, and Arcadio and Kelly rode in the back seat. The group arrived at
Prisileano’s apartment complex to find appellant and his friends, Rogelio Mora
(“Roger”), Brandon Dupuis (“Brandon”), and Leonardo Tellez (“Leo”), in Leo’s 
Grand Marquis, parked in front of Prisileano’s apartment. As Alfredo drove up,
Brandon walked out into the road and pointed a gun at the truck. Alfredo stopped as
Brandon went to the driver’s door and struck the window with the gun. Brandon
demanded that Alfredo get out of the truck. Roger and Leo went to the passenger side
and forced Prisileano from the truck at gunpoint as well.
          As Brandon held Alfredo, appellant approached wearing a blue bandana over 
his face. Appellant patted Alfredo down, then demanded money. Alfredo gave
appellant his wallet, but the wallet was empty. Appellant gave the wallet back to
Alfredo, then pushed him toward the truck and kicked him in the leg. Brandon and
appellant told Alfredo to get back in the truck and leave. As Alfredo got into the
driver’s seat, Brandon struck him in the face with the gun.
          Meanwhile, on the passenger side, Roger and Leo demanded money from
Prisileano. Prisileano did not have any money. Roger then leaned into the truck and
demanded money from Arcadio. Arcadio explained that he did not have any money
either. Roger, who was holding a gun on Prisileano, replied, “Start emptying out your
pockets or I am going to f--- up your friend.” Arcadio managed to find four dollars
and gave it to Roger.
          As Alfredo gathered himself from the blow, Prisileano was still outside being
pushed around by Roger and Leo. Roger asked his friends, “Should I do one of
them? Should I do one of them?” Prisileano replied, “Chill out. This is my house. 
I live right here.” As Alfredo, Arcadio, and Kelly sped away, they heard a gunshot. 
Arcadio and Kelly watched Roger shoot Prisileano three more times. Alfredo,
Arcadio, and Kelly called police and returned to the scene with officers to find
Prisileano dead. 
          The officers were able to identify and locate appellant, Brandon, and Leo from
composite sketches and a tip from Crime Stoppers. Kelly identified Roger as the
shooter, but Roger has not been found. Alfredo and Arcadio identified Brandon as
the person who stopped the truck with the gun and demanded that Alfredo get out. 
Alfredo identified appellant as the person wearing the blue bandana, who kicked him.
          In appellant’s videotaped statement to police, he explained that he and his
friends had been out at a club drinking and taking “Xanbars.” Appellant asserted that
he was asleep in the back seat of the car during the events leading up to the incident. 
Appellant stated that he awoke to find his friends engaged in what he thought was a
fight, so he jumped out to aid in their defense. He admitted having been with
Brandon in a confrontation with the driver of the truck and admitted having kicked
the driver. He remembered the driver running back into the truck and driving away. 
Appellant saw Roger with a gun and saw that Roger and Leo were in a confrontation
with a passenger on the other side of the truck. Appellant stated he heard several
gunshots and ran back to Leo’s Marquis. Appellant and his friends went to
appellant’s house, where appellant and Brandon fell asleep. Appellant did not contact
police and continued to associate with Brandon after the incident.
          The charge authorized the jury to convict appellant under any of three theories
of capital murder: (1) as a principal, (2) as a party, or (3) as a conspirator under the
law of parties.
Sufficiency of the Evidence
A.      Standards of Review
          A legal sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Although our analysis considers
all of the evidence presented at trial, we may not re-weigh the evidence and substitute
our judgment for that of the fact finder. King v. State, 29 S.W.3d 562, 562 (Tex.
Crim. App. 2000). 
          We begin the factual sufficiency review with the presumption that the evidence
supporting the jury’s verdict is legally sufficient. Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996). We view all of the evidence in a neutral light, and we
will set the verdict aside only if the evidence is so weak that the verdict is clearly
wrong and manifestly unjust, or the contrary evidence is so strong that the standard
of proof beyond a reasonable doubt could not have been met. Escamilla v. State, 143
S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004)). We must defer appropriately to the fact-finder to avoid
substituting our judgment for its judgment. Zuniga, 144 S.W.3d at 481-82. Our
evaluation may not intrude upon the fact-finder’s role as the sole judge of the weight
and credibility accorded any witness’s testimony. Cain v. State, 958 S.W.2d 404, 407
& n.5 (Tex. Crim. App. 1997). The fact-finder alone determines what weight to give
contradictory testimonial evidence because that question depends on how the fact-finder evaluates credibility and demeanor. Id. at 408. As the determinor of the
credibility of the witnesses, the fact-finder may choose to believe all, some, or none
of the testimony presented. Id. at 407. In conducting a factual-sufficiency review,
we must discuss the evidence that, according to appellant, most undermines the jury’s
verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 
          The standards of review for legal and factual sufficiency challenges are the
same for direct and circumstantial evidence cases. Sharp v. State, 707 S.W.2d 611,
614 (Tex. Crim. App. 1986). 
B.      Capital Murder and Party Liability 
          A person commits capital murder if he, inter alia, intentionally or knowingly
causes the death of an individual and he intentionally commits the murder during the
commission of or attempted commission of a robbery. Tex. Pen. Code Ann. § 19.03.
          A person commits robbery if, in the course of committing theft and with intent
to obtain or maintain control of property, he intentionally, knowingly, or recklessly
causes bodily injury to another, or intentionally or knowingly places another in fear
of imminent bodily injury or death. Tex. Pen. Code Ann. § 29.02(a) (Vernon 2003).
          A person is criminally responsible as a party to the offense if the offense is
committed “by his own conduct, by the conduct of another for which he is criminally
responsible, or by both.” Id. § 7.01(a). Each party to the offense may be charged
with its commission. Id. § 7.01(b). A person is criminally responsible for the
conduct of another if, acting with the intent to promote or assist the commission of
the offense, he solicits, encourages, directs, aids, or attempts to aid another person to
commit the offense. Id. § 7.02(a)(2). 
          Moreover, a conspiracy is an agreement between two or more parties with the
intent that one of them engage in conduct constituting an offense. Ladd v. State, 3
S.W.3d 547, 565 (Tex. Crim. App. 1999). If, in the attempt to carry out a conspiracy
to commit one felony, another felony is committed by one of the conspirators, then
all the conspirators are guilty of the offense actually committed, even though they
have no intent to commit it, if the offense was committed in furtherance of the
unlawful purpose and was one that should have been anticipated as a result of
carrying out the conspiracy. Tex. Pen. Code Ann. § 7.02(b).
C.      Legal Sufficiency of the Evidence 
          With regard to legal sufficiency, appellant contends, in his first, third, fifth,
seventh, and ninth issues, that the evidence failed to establish that he acted as a
principal, a party, or a conspirator, with the intent required to support his conviction. 
          Specifically, appellant contends that there was ample evidence that he did not
shoot Prisileano as alleged in the indictment; rather, the evidence showed that Roger
shot Prisileano. In addition, appellant asserts, there was no indication that appellant
intended for Roger to shoot Prisileano. Further, appellant argues that, given the
suddenness of events, there was no time for him to have taken any steps to aid, assist,
or encourage Roger to shoot Prisilieano, nor was there any indication that appellant
had time to plan a robbery conspiracy. These issues are combined as their analyses
are duplicative.
          The Court of Criminal Appeals has held that if evidence supports a charge
based on criminal responsibility for another’s actions, the court may submit such a
charge even though there is no such allegation in the indictment. Pitts v. State, 569
S.W.2d 898, 900 (Tex. Crim. App. 1978). What the accused intended during the
commission of the offense can be inferred from his acts, words, and conduct. See
Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). Mere presence of the
accused at the scene of the offense is insufficient to sustain a conviction as a party to
the offense. Valdez v. State, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981). Evidence
is sufficient to sustain a conviction under the law of parties where the defendant was
present at the scene of the offense and encouraged its commission by words or
agreement. Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994). Thus,
we look to the events occurring before, during, and after the commission of the
offense for actions by the appellant that indicate an understanding and common
design to do the prohibited act. Id. at 302 (reasoning that party status may be shown
by circumstantial evidence).
          Here, the videotape evidence shows that appellant admits that he spent the
evening with his friends at a bar and was present during the commission of the
offense. Appellant also admits that he was involved with Brandon in a confrontation
with the driver of the truck. Alfredo, the driver of the truck, identified appellant as
the person wearing the blue bandana who approached him and demanded money. It
was Arcadio’s testimony that Brandon and appellant both had guns. Alfredo reported
having been kicked in the leg by appellant; appellant admitted having kicked Alfredo. 
Moreover, Alfredo and appellant each testified to the same sequence of events—that
appellant kicked Alfredo just before Alfredo got into the truck to drive away. 
          Appellant testified that he was aware that Roger and Leo were on the passenger
side of the truck engaged in a confrontation with a passenger. Appellant stated that
he saw Roger with a gun, which appellant described in some detail—as a silver-colored automatic. The evidence showed that Roger looked to his companions for
their assent before shooting Prisileano by asking them if he “should do one of them.” 
Roger then shot Prisileano four times, killing him.
          Afterwards, appellant, Roger, Brandon, and Leo left together in Leo’s car.
Appellant and Brandon fell asleep at appellant’s house. Appellant continued to
associate with Brandon after the incident and did not contact police. 
          In sum, viewing the evidence in a light most favorable to the verdict, a rational
jury could have found that there was sufficient evidence that appellant assisted in
robbing Prisileano and his friends with guns. See Cienfuegos v. State, 113 S.W.3d
481, 490 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d) (finding ample evidence
of agreement to act in concert and opportunity to anticipate that someone could be
killed when appellant participated in abduction in which co-conspirator used gun to
force complainant from her car; when co-conspirator told complainant, in appellant’s
presence, that he intended to kill her; and, when appellant fled crime scene with co-conspirators). The jury could infer that appellant intended a shooting death when he
admitted knowing that Roger held a gun during the incident. Further, appellant was
able to offer a description of the firearm that indicated a familiarity that went beyond
just catching a glimpse of it in the dark that night. A firearm is, per se, a deadly
weapon. Tex. Pen. Code Ann. § 1.07(a)(17)(A) (Vernon 2003). Specific intent to
kill may be inferred from the use of a deadly weapon, unless it is reasonably apparent
that serious bodily injury or death could not result from the particular manner of use. 
Godsey v. State, 719 S.W.2d 578, 580-81 (Tex. Crim. App. 1986). Indeed, when a
deadly weapon is used and death results, the inference of an intent to kill is almost
conclusive. Flanagan v. State, 675 S.W.2d 734, 745 n.9 (Tex. Crim. App. 1982).
          Further, a rational jury could have concluded that the robbery was planned in
advance. First, there was ample time to plan it because the four perpetrators had been
friends for some time and spent the evening together at a bar. In addition, the robbery
appeared coordinated to situate appellant and Brandon on one side of the truck, and
Roger and Leo on the other. At a minimum, the evidence confirmed that Brandon and
Roger held guns; thus, placing one gun on each side of the truck. Demands for
money were made on both sides of the truck. Prior preparation was also suggested
by the fact that Brandon wore gloves and appellant wore a bandana as a mask.
          Viewing the evidence in the light most favorable to the verdict, we hold that
a rational trier of fact could have found beyond a reasonable doubt that appellant was
present at the crime scene, and that he intended and assisted in the commission of a
robbery and murder. Further, we hold that the jury could have found beyond a
reasonable doubt that appellant conspired to commit a robbery and should have
anticipated that a shooting death would result.
          We overrule appellant’s first, third, fifth, seventh, and ninth issues.
D.      Factual Sufficiency of the Evidence
          In his second, fourth, sixth, eighth, and tenth issues, appellant contends that the
evidence was factually insufficient to support his conviction because it was too weak
to support the jury’s finding that he acted as a principal, a party, or a conspirator, with
the intent required to support his conviction. Once again, these issues are combined.
          As discussed above, the State presented ample evidence that appellant was
present at the scene and was involved in the events. 
          Appellant contends that he was asleep in the back seat of the car during the
events leading up to the commission of the robbery. Appellant stated that he fell
asleep when he and his friends drove away from the bar and that he awoke to find his
friends in a fight with people outside of a truck. Appellant claimed that he simply
jumped out of the car and joined in to help his friends. Appellant asserted that he had
no knowledge of any agreement to rob anyone or had any ability to anticipate that
anyone would be shot. 
          However, appellant claimed that he first saw Brandon, outside of the truck near
the tailgate, engaged in a confrontation with “the driver.” The jury could have
reasonably concluded that, had appellant truly only awakened at this moment, he
would not have known that Alfredo was “the driver.” The evidence suggests that
appellant was present earlier, when Brandon first ordered Alfredo from the driver’s
seat. In addition, appellant admitted having seen Roger with a gun. However, Roger
was on the other side of the truck, behind the cab, throughout most of the events. 
This knowledge suggests that appellant was present much earlier in the confrontation
than he states. This also confirms that appellant was aware that there was a gun
involved, yet he willingly participated. See Cienfuegos, 113 S.W.3d at 490
(concluding evidence sufficient to sustain party liability for capital murder when
unarmed appellant sat waiting in car parked behind complainant, while another
assailant tapped on complainant’s car window with handgun and abducted her).
          In addition, the evidence shows that, after the incident, appellant, Roger,
Brandon, and Leo left together in Leo’s car, leaving Prisileano dying in the street. 
Appellant did not contact police; rather, he and Brandon fell asleep at appellant’s
house. See Tezino v. State, 765 S.W.2d 482, 485 (Tex. App.—Houston [1st Dist.]
1988, pet. ref’d) (concluding that failure to render aid known to be needed, or
prolonging the rendition of such aid, supports inference that injuries were
intentionally inflicted). The jury could have inferred that appellant was not stirred
by the events because what occurred was precisely what had been planned by the
group. 
          The jury, as the sole trier of facts, was free to believe the State’s evidence and
disregard appellant’s videotaped statements. Margraves v. State, 34 S.W.3d 912, 919
(Tex. Crim. App. 2000). We will not second-guess the jury’s determination as to the
credibility of witness testimony. See Dorsey v. State, 24 S.W.3d 921, 924 (Tex. Crim.
App. 2000). 
          We hold that the jury’s verdict in this case is not irrational, or clearly wrong
and manifestly unjust, or so strongly contrary to the evidence that the standard of
proof beyond a reasonable doubt could not have been met. See Escamilla, 143
S.W.3d at 817.
          We overrule appellant’s second, fourth, sixth, eighth, and tenth issues.
Conclusion
We affirm the judgment of the trial court.
 


                                                   Laura Carter Higley
                                                   Justice
 
Panel consists of Justices Nuchia, Hanks, and Higley.
Do not publish. Tex. R. App. P. 47.2(b).