Opinion issued February 28, 2008










     



In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00107-CR




CHARLES ANTHONY GRANT, Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 208th District Court 
Harris County, Texas
Trial Court Cause No. 1056384




MEMORANDUM OPINION

          A jury convicted appellant, Charles Anthony Grant, of aggravated robbery, see
Tex. Pen. Code Ann. § 29.03 (Vernon 2003), and assessed punishment at 50 years
in prison. In two issues, appellant contends that the trial court erred when it (1) did
not conduct a competency hearing before a jury and (2) denied appellant’s motion to
suppress the complainant’s pretrial lineup identification of appellant. 
          We affirm.
Background
          The complainant in this case, R. Edmund, is a Houston Metro bus driver. On
January 2, 2006, after finishing a route, Edmund stopped the bus for a break before
beginning his next route. Edmund was standing outside the bus smoking a cigarette
when appellant inquired about the bus route. Edmund had not finished his break but
allowed appellant to get on the bus because it was cold outside. Appellant got on the
bus and sat directly behind Edmund’s seat.
          Edmund finished his break and began his route with appellant as the only
passenger. After five minutes, appellant rang the bell to get off of the bus. As
Edmund slowed the bus to stop, appellant pulled out a handgun, cocked it, pointed
it at Edmund, and demanded Edmund’s money. Edmund gave appellant all of his
money and his cell phone. Edmund then pleaded with appellant to leave. At that
moment, Edmund’s rosary fell from his pocket onto the floor of the bus. When the
rosary fell, appellant fired the handgun. The shot missed Edmund but hit the bus near
the steps. 
          Appellant then ran to a nearby apartment complex. Edmund drove to another
location to call the police. 
          Approximately one week later, Edmund saw appellant’s picture on a television
news program. The program identified appellant as a suspect in a murder. Edmund
recognized appellant as the person who had robbed him. Edmund then contacted the
police. 
          On February 6, 2006, Edmund viewed appellant in a lineup with five other
men. Edmund positively identified appellant as the person who had robbed him. 
Appellant filed a motion to suppress Edmund’s identification, asserting that the
lineup was “impermissibly suggestive.” At trial, a videotape was admitted into
evidence showing the lineup. Edmund also identified appellant in court as his
assailant. 
          During trial, but outside the presence of the jury, the trial court noted on the
record that appellant had engaged in conduct that was disruptive to the proceedings
and admonished appellant to behave appropriately. At that time, defense counsel
informed the trial court that appellant had undergone a psychological evaluation the
previous year at the defense’s request. Defense counsel told the trial court that he had
asked for the evaluation because he had observed appellant engage in inappropriate
crying episodes. Defense counsel told the trial court that the evaluating psychologist
had found appellant to be “sane and competent at that time.” Based on appellant’s
recent behavior, however, defense counsel requested that appellant be re-evaluated
for competency. 
          Following the request, the trial court conducted an informal competency
inquiry outside the presence of the jury. At the conclusion of the inquiry, the trial
court denied defense counsel’s request that appellant be re-evaluated for competency.
Competency to Stand Trial
          In his first issue, appellant contends that “the trial court erred in not conducting
a competency hearing before a jury.” 
          We review a trial court’s decision not to conduct a competency hearing under
an abuse of discretion standard. Moore v. State, 999 S.W.2d 385, 393 (Tex. Crim.
App. 1999). The Code of Criminal Procedure provides that a defendant is presumed
competent to stand trial and shall be found competent to stand trial, unless proven
incompetent by a preponderance of the evidence. Tex. Code Crim. Proc. Ann. art.
46B.003(b) (Vernon 2006). The legislature has determined that a defendant is
incompetent to stand trial if he does not have (1) sufficient present ability to consult
with his attorney with a reasonable degree of rational understanding or (2) rational
as well as factual understanding of the proceedings against him. Id. art. 46B.003(a).
          If evidence is brought to the attention of the trial court from any source raising
a bona fide doubt as to the defendant’s competency, then the trial court must conduct
an informal inquiry outside the jury’s presence to determine whether there is evidence
to support a finding of incompetency. Id. art. 46B.004 (Vernon 2006); McDaniel v.
State, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003). In the inquiry, the court must
determine whether there is “some evidence” to support a finding of incompetency,
and, if the court so finds, it must then commence a hearing before a jury. McDaniel,
98 S.W.3d at 710; see also Tex. Code Crim. Proc. Ann. arts. 46B.005(b) , 46B.051
(Vernon 2006). The requirements of each step must be fulfilled before the next step
becomes applicable. McDaniel, 98 S.W.3d at 710–11. 
          Evidence capable of creating a bona-fide doubt about a defendant’s
competency may come from the trial court’s own observations, known facts, evidence
presented, motions, affidavits, or any other claim or credible source. Brown v. State,
129 S.W.3d 762, 765 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Evidence is
usually sufficient to create a bona-fide doubt if it shows recent, severe mental illness,
at least moderate retardation, or truly bizarre acts by the defendant. McDaniel, 98
S.W.3d at 710. 
          Here, appellant cites the following occurrences or evidence in the record to
show that “some evidence” was presented to raise a bona fide doubt whether he was
competent to stand trial: 
(1) The trial court noted that appellant had engaged in disruptive
behavior during trial, including verbal outbursts, banging on counsel
table, raising his hand during voir dire, pounding on his own face,
throwing his hands up, laughing, rolling his eyes, and slouching in his
chair. 
 
(2) Appellant engaged in inappropriate crying episodes. The bailiff
testified that he had seen appellant crying in the holding cell.
 
(3) Dr. Steven McCary, the psychologist who had evaluated appellant
10 months earlier, testified during the punishment phase that appellant
was of low intelligence and possibly mentally retarded, appellant
displayed some difficulties in understanding the legal system, but was
“at least marginally competent,” and appellant had a history of some
psychiatric disorders for which he had taken medication. 
 
(4) Appellant did not appear to understand certain concepts pertinent to
his trial, including the sentencing range for the charge he faced (he
asked the trial court for the death penalty), what a plea bargain is, or that
his sisters’ testimony provided him with an alibi for the night in
question.
 
(5) Appellant’s testimony during trial was, at times, “indecipherable”
and “incomprehensible.”
          After reviewing the record, we do not agree with appellant that his
inappropriate and disruptive behavior constitutes evidence of his inability to
communicate with counsel or factually appreciate the proceedings against him. In
Moore v. State, the Court of Criminal Appeals held that disruptive behavior is not, by
itself, probative of incompetence. 999 S.W.2d 385, 395 (Tex. Crim. App. 1999). The
Moore court noted, “If such [disruptive] actions were probative of incompetence, one
could effectively avoid criminal justice through immature behavior.” Id. 
          Here, the record reflects that, when the trial court admonished him for his
disruptive behaviors, appellant acknowledged that his conduct was inappropriate,
appeared contrite, and apologized to the court. Though inappropriate, nothing in the
record indicates that appellant’s behaviors were not timely, topical, or logically
related to what was occurring in the proceedings. See id.; see also Smith v. State, 51
S.W.3d 806, 812 (Tex. App.—Texarkana 2001, no pet.) (concluding that defendant’s
actions of removing his clothes, lying on floor, and refusing to move did not
constitute evidence casting doubt on his competency; rather, such conduct was in
protest to “his perceived unfairness of the trial court’s actions”). The same can be
said of appellant’s crying episodes.
          We also disagree with appellant that the testimony of Dr. McCrary, the
evaluating psychologist, when read in its entirety and in context, provided some
evidence of appellant’s inability to communicate with counsel or factually appreciate
the proceedings against him. Dr. McCrary opined that appellant was “possibly”
mentally retarded but was probably in the “low-borderline” range of intelligence. 
While the Court of Criminal Appeals has concluded that evidence of moderate or
greater retardation is sufficient to create a question of competency, we have found no
authority concluding that evidence showing that a defendant is “possibly” mentally
retarded with probable low-borderline intelligence is, by itself, sufficient to show
incompetency. See McDaniel, 98 S.W.3d at 710. To the contrary, Dr. McCrary
testified that, after he had spoken with appellant for a time, he believed that appellant
understood “the basics of what goes on in a trial.” Dr. McCrary made clear that his
ultimate professional opinion had been that appellant was competent to stand trial.
Moreover, Dr. McCrary’s testimony indicating that appellant had, at some point,
suffered from one or more psychiatric disorders, for which he required medication,
did not mandate a competency inquiry absent evidence of a present inability to
communicate with his attorney or to understand the proceedings. See Moore, 999
S.W.2d at 395–96; Brown, 129 S.W.3d at 766. 
          The record does show that appellant had difficulty understanding certain
concepts with respect to the legal proceedings. Appellant was unaware of the
sentencing range for the charged offense, did not appear to understand that his sisters
had provided him with an alibi for the night in question, and did not appear to
understand the concept of a plea bargain. Though the record indicates that he did not
understand these individual, isolated concepts, the record also reveals that appellant
understood the overall proceedings and the charges against him. 
          During the informal inquiry, appellant articulated to the trial court that he
understood that he was on trial for robbing a bus driver. Appellant also displayed an
understanding of the roles played by the trial judge, the prosecutor, and the defense. 
Also, as mentioned, Dr. McCrary found in his evaluation that appellant had an
adequate understanding of the proceedings. The individual instances of appellant’s
lack of knowledge were not evidence of appellant’s inability to communicate with
counsel or factually appreciate the proceedings against him. 
          Lastly, appellant contends that his “indecipherable” and “incomprehensible”
testimony during the guilt-innocence and punishment phases demonstrated his
incompetence to stand trial. Appellant points out that the court reporter and the
questioning attorney “on at least thirty occasions” did not understand appellant’s
testimony. Appellant also points out that his testimony regarding where he was on
the night of the robbery was inconsistent with his sisters’ alibi testimony. 
          We have thoroughly reviewed the record, and it does show that the court
reporter and the questioning attorney had difficulty understanding appellant’s
responses at times. But the record also reveals that the difficulty stemmed from
appellant not speaking loudly enough, from appellant covering the microphone with
his hand, or from appellant not articulating clearly.
          Although appellant’s answers were, at times, rambling and nonresponsive to
the questions he was asked, most of appellant’s testimony reveals simply that he
wanted an opportunity to tell his story in his own way and to relate what he felt was
important. Appellant’s testimony also indicated that he understood the charges
against him. Appellant denied robbing Edmund, denied possessing a gun, and denied
that he had ever ridden a Metro bus. While some of appellant’s testimony may have
been damaging and ill-advised, it did not suggest that he lacked a rational
understanding of the case against him or an inability to communicate with his
counsel. See Baldwin v. State, 227 S.W.3d 251, 256 (Tex. App.—San Antonio 2007,
no pet.) (concluding that, even though some of defendant’s testimony was
“damaging” and “misguided,” it did not show he lacked of rational understanding of
case against him); Lawrence v. State, 169 S.W.3d 319, 322–23 (Tex. App.—Fort
Worth 2005, pet. ref’d) (holding that defendant’s rambling and nonresponive
testimony was not evidence of incompetency); cf. Greene v. State, 225 S.W.3d 324,
329 (Tex. App.—San Antonio 2007, no pet.) (concluding that defendant’s rambling
and confused testimony revealing descriptions of hallucinations he experienced
showed he was “out of touch” with reality at time of trial and holding that trial court
abused its discretion in failing to conduct competency inquiry).
          We hold that the trial court did not abuse its discretion when it did not conduct
a competency hearing before a jury. We overrule appellant’s first issue. 
Pretrial Lineup Identification of Appellant
          In his second issue, appellant contends that the trial court erred when it denied
his motion to suppress Edmund’s pretrial lineup identification of him. Appellant
asserts that the lineup viewed by Edmund was impermissively suggestive because of
the disparity in age, height, weight, and appearance of appellant and the other lineup
participants. More specifically, appellant asserts, “Appellant did not resemble any
of the other five men in the lineup and none of the other five men resembled
[Edmund’s] initial description of the robber.” 
          Appellant points out that Edmund described his assailant as being between 18
and 20 years of age and being 5 feet 7 inches tall. The record shows that appellant
is 5 feet 9 inches tall and was 18 years old at the time of the line-up. Appellant
further points out that two of the other lineup participants were 30 and 31 years old. 
Two others were six inches taller than appellant, and the fifth participant was two
inches taller and forty pounds heavier than appellant. Appellant contends that the
man who most resembled appellant in the lineup “was noticeably balding,” while
appellant was not balding. 
          Appellant concludes, “The reality is that none of the fill ins looked anything
like Appellant or like the physical description the complainant initially gave to police. 
As a result, the lineup was unduly suggestive.” 
          We apply a de novo standard of review to determine whether an identification
procedure was so impermissibly suggestive that it gave rise to a very substantial
likelihood of misidentification. Cienfuegos v. State, 113 S.W.3d 481, 491 (Tex.
App.—Houston [1st Dist.] 2003, no pet.). We first look to the totality of the
circumstances surrounding the identification to determine if the procedure was
unnecessarily suggestive. Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App.
1988). If we conclude that the identification procedure was impermissibly
suggestive, we then consider the factors listed in Neil v. Biggers, 409 U.S. 188, 199,
93 S. Ct. 375, 382 (1972) to determine whether the suggestive procedure gave rise to
a substantial likelihood of irreparable misidentification. Cienfuegos, 113 S.W.3d at
491. A defendant bears the burden to show both impermissible suggestion and a
substantial likelihood of misidentification by clear and convincing evidence. Barley
v. State, 906 S.W.2d 27, 33–34 (Tex. Crim. App. 1995). 
          Though good practice dictates that the individuals in a lineup should be as
similar as possible, a pretrial identification procedure is not impermissibly suggestive
simply because the lineup members are not identical in appearance. Buxton v. State,
699 S.W.2d 212, 216 (Tex. Crim. App. 1985); Cienfuegos, 113 S.W.3d at 491. 
Neither due process nor common sense requires such exactitude. Buxton, 699 S.W.2d
at 216; Cienfuegos, 113 S.W.3d at 491. A lineup becomes suggestive when the
accused is placed with persons of distinctly different appearance, race, hair color,
height, or age. Withers v. State, 902 S.W.2d 122, 125 (Tex. App.—Houston [1st
Dist.] 1995, pet. ref’d). Minor discrepancies between lineup participants will not
render a lineup unduly suggestive. Id. In sum, the individuals need not be identical
in appearance to the defendant, but their similarities in appearance should provide a
reasonable test for the witness’s capacity to reliably identify the perpetrator. 
Cienfuegos, 113 S.W.3d at 492. 
          As mentioned, appellant bases his challenge to the lineup on discrepancies in
the height, weight, and age of appellant and the other individuals in the lineup. The
record reflects that one of the lineup participants was noticeably heavier than
appellant and that two of the participants were notably taller. The fact that two of the
participants were approximately 12 years older than appellant was not overly
noticeable, as claimed by appellant. As pointed out by appellant, one of the two older
participants had a receding hairline, but was otherwise the most similar to appellant
in appearance. 
          Despite the dissimilarities, we note that all six men in the lineup were dressed
in civilian clothes, were African-American, and appeared to be in the same general
age range. The participants each wore his hair in a similar fashion, save the man
whose hair was receding slightly. Moreover, all the men in the lineup, except one,
wore thin facial hair in varying patterns.
          We conclude that the height and weight of appellant and the other members of
the lineup were not so distinctly different as to make the identification procedure
impermissibly suggestive. This is particularly true in light of the overall similarities
in the men’s actual appearances, as reflected in the videotaped lineup. We conclude 
that appellant has not shown by clear and convincing evidence that the lineup
procedure was impermissibly suggestive.
          Even assuming that it was impermissibly suggestive, the lineup did not give
rise to the substantial likelihood of irreparable misidentification when analyzed under
the Biggers factors. The Court of Criminal Appeals has held that five nonexclusive
Biggers factors should be “weighed against the corrupting effect of any suggestive
identification procedure in assessing reliability under the totality of the
circumstances.” Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998)
(citing Biggers, 409 U.S. at 199, 93 S. Ct. at 382–83). 
          These factors include (1) the opportunity of the witness to view the criminal
at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the
witness’s prior description of the criminal; (4) the level of certainty demonstrated by
the witness at the confrontation; and (5) the length of time between the crime and the
confrontation. Id. We review the application of these factors under a de novo
standard. Id.
          The record shows that Edmund viewed the lineup a little over one month after
the robbery. The record also shows that the description Edmund gave police matched
appellant’s appearance. 
          At the suppression hearing, Edmund testified that he first encountered appellant
when Edmund was on break and appellant asked to get on the bus. Edmund testified
that he noticed appellant was fidgety but had assumed it was because appellant was
cold. Edmund then told appellant that he could sit on the bus while Edmund finished
his break. Edmund stated that this “first encounter” with appellant lasted two
minutes.
          Edmund testified that appellant rode the bus about five minutes before
appellant rang the bell to stop. Edmund stated that appellant sat “right behind me”
on the bus. Edmund testified that, after appellant rang the bell and as the bus was
slowing to stop, he heard appellant cock the gun. Appellant then demanded
Edmund’s money. Edmund stated that, after the bus was stopped, he was face to face
with appellant for two to five minutes during the robbery. Edmunds also testified, “I
was standing right in front of him [during the robbery] looking at him. I was calm,
I was telling him, ‘Brother, you got everything. Please, take it and go.’”
          Edmund further testified that, when he viewed the lineup, he “immediately”
recognized appellant as the person who had robbed him. When asked how certain he
was at the lineup that appellant was his assailant, Edmund responded, “Oh, 100
percent sure.” On cross-examination when asked if he had noticed that the other men
in the lineup were dissimilar to appellant in appearance, Edmund stated that he had
only paid attention to appellant because he immediately recognized appellant as his
assailant.
          After applying the Bigger factors, we conclude that the lineup identification
procedure was not so “corruptive” as to outweigh the factors supporting the
identification. That is, appellant has not shown by clear and convincing evidence that
there was a very substantial likelihood of irreparable misidentification. Accordingly,
we hold that the trial court did not abuse its discretion in denying appellant’s motion
to suppress evidence of Edmund’s pretrial lineup identification of appellant.
          We overrule appellant’s second issue. 
Conclusion
          We affirm the judgment of the trial court.



 
Laura Carter Higley
                                                             Justice

Panel consists of Justices Nuchia, Hanks, and Higley.

Do not publish. See Tex. R. App. P. 47.2(b).